Thomas Perry **REGAN**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 14–97–00614–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 2, 1999.

R. Scott Shearer, Houston, for appellants.

Kelly Ann Smith, Houston, for appellees.

Panel consists of Justices YATES, FOWLER and FROST.

## OPINION

FOWLER, Justice.

Over his plea of guilty, a jury found appellant, Thomas Perry Regan, guilty of aggravated robbery in the first degree. *See* TEX. PEN.CODE ANN. § 29.03 (Vernon 1994). The jury assessed punishment at thirty-five years imprisonment in the Texas Department of Criminal Justice, Institutional Division. Appellant appeals his conviction on three points of error. We affirm the trial court judgment.

### THE CONTROVERSY

On the morning of August 9, 1996, Kimberly Weynand, a manager of an Ace Cash Express store, arrived at the store to begin her work day. While walking toward the store, Weynand noticed that a window in the adjacent abandoned store had been broken. When Weynand entered the store, she turned off the store's alarm which included several motion detectors. As Weynand prepared for that day's work by counting the money from the night before, a man surprised her from behind and placed one hand over her mouth and held a sharp object to her neck. The man said, "Don't scream. Don't look at me and

I won't hurt you." Because she thought she was alone in the store, Weynand was completely surprised by the man and unable to push the store's "hold-up" alarm button.

Weynand testified that, although she could not tell whether it was a knife or an ice pick, she could tell it was a sharp handheld instrument. She also stated that she felt it could have caused her death.

While the man held the sharp object to her neck, he ordered Weynand to open the safe. Weynand informed him that she had already opened the safe. The man walked Weynand to the safe and ordered her to lie down on the floor while he emptied the safe of more than $11,500. After the man emptied the safe, he ordered Weynand to walk into the bathroom, lie down, and count down from one hundred. The man then exited through a hole in the sheetrock wall and into the adjacent abandoned building. According to Weynand, the bathroom is the only room not monitored by the motion detectors. After a short period of time, Weynand arose and ran and hit the store's "hold-up" button.

When the police arrived, she related to them what had happened and provided the police a description of the man. Sometime later, appellant became a suspect in the store's robbery. The police showed Weynand a photographic lineup which included six photographs of different individuals. After viewing the photographic lineup for fifteen to twenty seconds, Weynand positively identified appellant as the man who robbed the store. Weynand later identified appellant at a live line-up after appellant's arrest.

After a jury trial, appellant was convicted of aggravated robbery. Appellant appeals his conviction on three points of error.

### DISCUSSION AND HOLDINGS

In his first point of error, appellant contends the trial court erred when it allowed into evidence two extraneous offenses involving appellant and one alleged extraneous offense involving appellant's wife.

Appellant argues that these extraneous offenses were inadmissible under Rules 404(b) and 403 of the Texas Rules of Evidence. We disagree.

This evidence was presented by the State after appellant impeached Weynand's identification of appellant and presented his alibi defense that he was in Waco, Texas, delivering papers at the time of the robbery. The first extraneous offense was a June 26, 1996, burglary of another Ace Cash Express. Detective Joe Salvato testified that appellant became a suspect in the robbery at Weynand's Ace Cash Express location because he had committed a burglary of an Ace Cash Express on June 26, 1996. In that case, a silent alarm activated, alerting the police to appellant's presence, and they caught him leaving a vacant building next to the Ace Cash Express. A second police officer, Ron Buchert, testified that before the police arrived, appellant had knocked a hole in the sheetrock wall from the vacant building into the Ace Cash Express store, exactly like he had done at Weynand's location. When the police arrested appellant, they searched his car, and they found a cellular phone, a box cutter, crowbar, small hammer, pry bar, surgical gloves, and a shirt covered in sheetrock dust. In addition, appellant was wearing shoes which matched footprints left in the dust in the vacant building.

The second extraneous offense the State offered into evidence was an October 5, 1996 robbery of another Ace Cash Express location. In this robbery, an employee of Ace Cash Express, Komik Sullivan, was alone in the bathroom, which was in a secure part of the store. Sullivan testified that she heard a noise and came out of the bathroom to investigate; just then, a man burst through the wall. He had a drill in one hand and a gun in the other. He told Sullivan to freeze, but she ran into the bathroom and pushed the panic button. When she later came out of the bathroom, she discovered that $6,000 had been taken,

along with a couple of bags of checks, her purse, and her blue duffle bag.

A second witness, Wade Collins, an employee of a neighboring dry cleaners, testified that when he was behind the cleaners, he saw a man carrying a blue duffle bag. Collins thought nothing of it, until a man ran into the dry cleaners saying the Ace Cash Express had been robbed and he needed to call the police. At a later line-up, Collins identified appellant as the man carrying the blue duffle bag.

The third alleged extraneous offense the police introduced at trial involved the appellant's wife, Lara Regan. First, the State put on the testimony of the officer investigating the June 26, 1996, burglary, who told the jury that the tools used in the burglary had been removed from the evidence room. Then, Lara Regan testified that she retrieved from the police station evidence which had been seized in appellant's June 26, 1996, arrest. The evidence was in a large box which the police placed in her car. She never saw any of the items in the box, so she did not know what the box contained. Once the box was in her car, appellant drove it away, while his wife drove off in the other family vehicle with their children. Finally, the police officer who actually released the evidence testified. On direct examination by the State, he testified that he released the evidence to Lara Regan after checking her identification. On cross, by appellant's lawyer, the officer admitted that he was suspended from duty for releasing the items.

Rule 404(b) of the Texas Rules of Evidence governs the admissibility of extraneous offenses:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

TEX.R. EVID. 404(b).

In this case, appellant's two extraneous offenses were offered as proof of identity because appellant raised an alibi defense through the testimony of his wife. "By putting on an alibi defense, appellant placed his identity in issue." *Poullard v. State*, 833 S.W.2d 273, 277 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). In addition, appellant impeached Weynand's identification of him. "When the State's only identifying witness is impeached on cross-examination, raising the issue of identity, the extraneous offense becomes admissible." *Siqueiros v. State*, 685 S.W.2d 68, 71 (Tex.Crim.App.1985). Also, the extraneous offenses showed appellant's modus operandi. "Evidence of a defendant's particular modus operandi is a recognized exception to the general rule precluding extraneous offense evidence, if the modus operandi evidence tends to prove a material fact at issue, other than propensity." *Owens v. State*, 827 S.W.2d 911, 915 (Tex.Crim.App.1992).

Once appellant made his identity an issue at trial, the State was free to bring forth these extraneous offenses as long as the offenses proved a material fact at issue and not appellant's propensity to commit a crime. We believe they did. They proved appellant's identity.

We also find no error with the admission, over a 404(b) objection, of the alleged extraneous offense involving appellant's wife. First, we fail to see what offense was committed when Lara Regan went to the police station, identified herself and asked for appellant's property. Obviously, the police made a mistake when they gave her the property, but she certainly did not commit a crime in receiving the items. The police should have known not to release items seized from the commission of a burglary. Consequently, there was no extraneous offense admitted as to appellant's wife. Second, even if this

testimony is considered as proof of an extraneous offense by appellant, it still does not violate rule 404(b). In order to have the offense admitted, the State was required to prove beyond a reasonable doubt that appellant committed it. When this evidence was introduced, the jury already had some evidence that appellant had committed the June 26 burglary. Police had testified that he was caught in the act; however, they were not able to introduce the actual tools used in the burglary. This testimony provided further evidence of the June 26 burglary, plus an explanation for why the police did not have the tools. Thus, we find that the evidence was admissible under rule 404(b).

■ Appellant also argues that the evidence was not admissible under rule 403. Under that rule, "if the opponent makes a rule 403 objection, the trial judge must weigh the probativeness of the evidence to see if it is *substantially* outweighed by its potential for unfair prejudice, confusion of the issues, misleading the jury, undue delay, or needless presentation of cumulative evidence." *See San-tellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim.App.1997). Several factors the trial court should consider in making this determination are as follows:

(1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable—a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense;

(2) the potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way";

(3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; and

(4) the force of the proponent's need for this evidence to prove a fact of consequence, *i.e.*, does the proponent have other probative evidence available to

him to help establish this fact, and is this fact related to an issue in dispute. *Id.* An appellate court will only reverse the trial court's decision upon a clear abuse of discretion. *See id.* However, the trial court's decision must be reasonable in light of all the relevant facts. *See id.*

■ We do not believe the trial court abused its discretion by allowing the two extraneous offenses to be admitted over an objection under rule 403. An analysis of the above factors proves as much. We have previously determined that the two extraneous offenses serve to make a fact of consequence, namely appellant's identity, more probable. This evidence did not have the potential to impress the jury in an irrational way. The State did not take an undue amount of time in developing this evidence, thus the jury was not distracted from the consideration of the indicted offense. And, lastly, the State had no other way to prove appellant's identity once he impeached Weynand's identification and offered an alibi defense. In light of these factors, the trial court did not abuse its discretion in allowing the extraneous offenses into evidence over appellant's rule 403 objection.

The admission of Lara Regan's actions does not lend itself to a rule 403 analysis, mainly because, as we have already stated, her actions did not constitute an extraneous offense. However, since the objection was made, we will subject the evidence to a rule 403 analysis.

■ Looking to the first factor, as already noted, we have been unable to discern any offense that Lara Regan committed by retrieving her husband's effects from the police. As to the second factor, we do not see how the evidence had the potential to impress the jury in some irrational but indelible way. From the evidence, the jury knew that Lara Regan retrieved a box for her husband and did not know what was in the box, and the jury probably assumed that Lara Regan knew why her husband had been arrested.

Regarding the third factor, the State did not take long to develop the testimony so that it was not likely to distract the jury from the indicted offense. Finally, as to the fourth factor, it is difficult to determine if it impeached Lara Regan to any degree. Apparently, the State had no other evidence showing some knowledge on Lara Regan's part that her husband had committed a burglary before the one on August 9, 1996; in the jury's eyes, this evidence might have shown that she knew her husband was accused of burglary. All of these factors considered, we do not find that the prejudicial effect, substantially outweighed the probative effect. Therefore, we find no clear abuse of discretion in its admission, and we overrule appellant's first issue presented for review.

▇▇ In his second issue for review, appellant contends the evidence is not factually sufficient to support his conviction for aggravated robbery because the object placed against Weynand's neck was not shown to be a deadly weapon. And, in his third issue for review, appellant contends the evidence is not legally sufficient to support his conviction for aggravated robbery because the object placed against Weynand's neck was not shown to be a deadly weapon. We will address the legal sufficiency of the evidence issue first. *See Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim.App.1996) (stating that after a court conducts a legal sufficiency review, it may then conduct a factual sufficiency review).

▇▇ When reviewing the legal sufficiency of the evidence, this court must decide " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Garrett v. State*, 851 S.W.2d 853, 857 (Tex. Crim.App.1993) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). This same standard of review applies to cases involving both direct and circumstantial evidence. *See King v. State*, 895 S.W.2d 701, 703 (Tex. Crim.App.1995). On appeal, this court does not re-evaluate the weight and credibility of the evidence, but we consider only whether the jury reached a rational decision. *See Muniz v. State*, 851 S.W.2d 238, 246 (Tex.Crim.App.1993). On the other hand, in conducting a factual sufficiency review, this court must view all the evidence without the prism of in the light most favorable to the prosecution and must set aside the verdict only if it is so contrary to the weight of the evidence as to be clearly wrong and unjust. *See Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim.App.1996).

Appellant was charged with aggravated robbery. He argues the evidence was insufficient to prove the use of a deadly weapon because Weynand did not see the object placed against her neck and because she received no scratches. We disagree. A person commits robbery when in the course of committing theft, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. *See* TEX. PEN.CODE ANN. § 29.02 (Vernon 1994). Robbery becomes aggravated robbery when the accused uses or exhibits a deadly weapon. *See* TEX. PEN.CODE ANN. § 29.03 (Vernon 1994). A deadly weapon is "(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17) (Vernon 1994).

In this case it is undisputed that appellant placed a sharp object against Weynand's neck. The State contends that the object was a knife, or even a box cutter or screw driver. Whatever the object was, it is clear from the record that it was an unknown object. This court has previously addressed this situation. "We find no case that has specifically dealt with the issue of an absent, unidentified deadly weapon; however, we see nothing in the reasoning of prior deadly weapon cases that would preclude a deadly weapon find-

ing simply because the weapon is not specifically known." *Mixon v. State*, 781 S.W.2d 345, 346 (Tex.App.—Houston [14th Dist.] 1989), *aff'd*, 804 S.W.2d 107 (Tex. Crim.App.1991) (per curiam); *see Stanul v. State*, 870 S.W.2d 329, 333 n. 3 (Tex. App.—Austin 1994, pet. ref'd). The court continued by stating the following: " 'A weapon or instrument is deadly if by its use or intended use it is capable of inflicting death or serious bodily injury.' However, instruments that are not known as deadly weapons per se become so only upon evidence on the manner in which they are used." *Mixon*, 781 S.W.2d at 346 (citations omitted).

At trial, the State offered evidence on how the instrument was used. The record reflects that during the robbery, appellant jammed a sharp metal object against Weynand's neck—in the soft spot under the ear and behind the jaw. Weynand testified that it felt like a knife or an ice pick. She also testified that it was a handled instrument because she never felt his right hand on her. Appellant held this object poking into her neck the entire time he was robbing the Ace Cash Express until he made Weynand lie down on the floor. The State also presented the testimony of two police officers who stated that they believed the weapon, as described to them by Weynand during the investigation, was in their experience and training used in such a manner that it was capable of causing serious bodily injury or death. Thus, the officers testified that the weapon was a deadly weapon. Based on this evidence, the jury made an affirmative finding of a deadly weapon.

After viewing the evidence in the light most favorable to the prosecution, we find a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, namely that appellant used a deadly weapon in the commission of the offense. We, therefore, find the evidence legally sufficient to support appellant's conviction for aggravated robbery. In addition, the jury's conclusion of a deadly weapon is not so contrary to the weight of the evidence as to be clearly wrong and unjust. We, therefore, find the evidence factually sufficient to support appellant's conviction for aggravated robbery. We overrule appellant's second and third points of error, and we affirm the trial court judgment.