IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00027-CR

 

Douglas Dwane Shirley,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 



From the 271st District Court

Jack County, Texas

Trial Court No. 3,802

 



MEMORANDUM  Opinion



 

Appellant has filed a motion to dismiss his
appeal.  See Tex. R. App.
P. 42.2(a); McClain v. State, 17 S.W.3d 310, 311 (Tex. App.—Waco 2000,
no pet.).  We have not issued a decision in this appeal, and Appellant has personally
signed the motion.  Accordingly, the appeal is dismissed.

 

PER CURIAM

 

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray dissenting)

Appeal
dismissed

Opinion delivered and
filed September 6, 2006

Do not publish

[CR25]






'>BACKGROUND

          Harrison was tried for murdering and
causing serious bodily injury to his eight-month-old son.  The baby lived with
the baby’s mother, grandmother, and his mother’s brothers and sisters.  The
baby’s mother testified that Harrison stayed at the house the night before the
baby died.  She had put the baby to bed in her room with Harrison while she took
a shower.  While she was showering, she heard the baby crying.  When she
returned to her room, the baby was having a hard time breathing and looked
sleepy.  A few minutes later, the baby vomited.  The baby threw up twice more
and also fell out of the bed during the night.

The following morning, the grandmother took the
mother to school.  The grandmother and one of the mother’s brothers were taking
the baby to the doctor when the baby stopped breathing.  They stopped at a police
station, and an officer attempted CPR on the baby.  The baby was taken to a
hospital.

A forensic pathologist testified that the baby
died of blunt force trauma to the abdomen.  He testified that the baby had many
older injuries and bruises in addition to the trauma that resulted in his
death.  He estimated that the fatal injuries occurred within fourteen hours
before the baby died.  He said that after receiving this kind of injury, a baby
would likely cry, have breathing difficulties, vomit, and appear sleepy.

Harrison
did not testify.  A statement made by Harrison to police was admitted into
evidence.  In the statement, Harrison states that he and his son would “play-fight”
and that Harrison would “softly hit him” in the body.  The officer who took the
statement testified that Harrison told him that he could have hit the baby too
hard.  A different officer testified that in the course of being taken to jail,
 Harrison mumbled “I killed him” under his breath.  

After booking Harrison, that officer said to Harrison, “Now you confessed to having killed your son, didn’t you?”  Harrison responded,
“What are you—what are you talking about?  I didn’t say anything like that.”  Two
child witnesses for the defense testified that the baby’s mother’s youngest
sister told them that she had killed her nephew.

Harrison brings five issues on appeal:  (1) the
trial court erred in allowing the State, during guilt-innocence, to ask
questions about Harrison’s prior assault convictions; (2) the trial court erred
in entering the deadly-weapon finding because the State failed to give proper
notice of its intent to seek a deadly-weapon finding; (3) the evidence was
factually and legally insufficient to support a deadly-weapon finding; (4) the
evidence was factually and legally insufficient to prove that the manner and
means of inflicting the injury was unknown to the grand jury; and (5) the
evidence was factually and legally insufficient to support both counts because
of inconsistent findings.

          We will reverse the judgment and
remand the case to the trial court.

Deadly-Weapon Issues  

          Harrison’s second issue
argues that he did not receive adequate notice of the State’s intent to seek a
deadly-  deadly "fied defendant was "he
deadly-weapon finding and affirm.theweapon finding.  The State responds
that the indictment placed the defendant on notice because it charged Harrison with “an act clearly dangerous to human life, to-wit: striking [victim] about the
body with a blunt object unknown to the grand jury, that caused the death of
[victim].”

          A defendant is entitled to
notice that the State will seek an affirmative finding that a deadly weapon was
used during the commission of the offense.  Ex parte Brooks, 847 S.W.2d
247, 248 (Tex. Crim. App. 1993); see Grettenburg v. State, 790 S.W.2d
613, 614 (Tex. Crim. App. 1990) (accused is only entitled to notice, in some
form, that use of deadly weapon will be a fact issue at trial).  An allegation
in the indictment that a weapon or object caused death or serious bodily injury
is sufficient notice for a deadly weapon finding.  Ex parte Beck, 769
S.W.2d 525, 526-27 (Tex. Crim. App. 1989).

Even if the object
is not identified, a factfinder may affirmatively find that a deadly weapon was
used.  See Gordon v. State, 2005 WL 2158824 at *2 (Tex. App.—Fort Worth Sept.
8, 2005, no pet. h.); Regan v. State, 7 S.W.3d 813, 819-20 (Tex.
App.—Houston [14th Dist.] 1999, pet. ref’d); Stanul v. State, 870 S.W.2d
329, 333 n.3 (Tex. App.—Austin 1994, pet. ref’d); Mixon v. State, 781
S.W.2d 345, 346-47  (Tex. App.—Houston [14th Dist.] 1989, aff’d, 804
S.W.2d 107, 108 (Tex. Crim. App. 1991) (adopting part of court of appeals’
opinion that deadly weapon finding may be made even if object is not
identified).  A deadly weapon can be “anything that in the manner of its use or
intended use is capable of causing death or serious bodily injury.”  Tex. Pen. Code § 1.07(a)(17)(B) (Vernon
2003).  The deadly character of a weapon may be shown by the character of the
wound inflicted.  See Mixon, 781 S.W.2d at 347.  Objects that are not
deadly weapons per se become so only upon evidence on the manner in which they
are used.  Turner v. State, 664 S.W.2d 86, 90 (Tex. Crim. App. 1983).

In this case, the indictment
provided sufficient notice to Harrison of the State’s intent to seek a
deadly-weapon finding.  Id.  We overrule Harrison’s second issue.

His third issue
asserts that the evidence is legally and factually insufficient to support the
jury’s deadly weapon finding.  Pointing to the autopsy report’s finding that
the cause of death was “blunt force injuries,” Harrison claims that the
evidence is insufficient to show that the cause of death was inflicted by any
object and that the baby could have been injured by contacting the ground, a
floor, or some other item not considered a deadly weapon.

We apply the
established standards of review for legal and factual sufficiency on this
issue.  See Gordon, 2005 WL 2158824 at *1.  When reviewing a challenge
to the legal sufficiency of the evidence to establish the elements of a penal
offense, we must determine whether, after viewing all the evidence in the light
most favorable to the verdict, any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560
(1979).  The standard is the same for both direct and circumstantial evidence
cases.  Kutzner v. State, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999).

We do not resolve any conflict of fact or assign
credibility to the witnesses, as this was the function of the trier of the
fact.  See Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); Adelman
v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); Matson v. State,
819 S.W.2d 839, 843 (Tex. Crim. App. 1991).  Instead, our duty is to determine
if the findings of the trier of fact are rational by viewing all of the
evidence admitted at trial in a light most favorable to the verdict.  Adelman,
828 S.W.2d at 422.  In so doing, any inconsistencies in the evidence are
resolved in favor of the verdict.  Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); Matson, 819 S.W.2d at 843.

In a factual-sufficiency review, we view all of the evidence in
a neutral light and consider only whether a jury was rationally justified in
finding guilt beyond a reasonable doubt.  Zuniga v. State, 144 S.W.3d
477, 484 (Tex. Crim. App. 2004).  However, there are two ways in which the evidence
may be insufficient.  Id.  First, when considered by itself, evidence
supporting the verdict may be too weak to support the finding of guilt beyond a
reasonable doubt.  Id.  Second, there may be both evidence supporting
the verdict and evidence contrary to the verdict.  Id.  Weighing all the
evidence under this balancing scale, the contrary evidence may be strong enough
that the beyond-a-reasonable-doubt standard could not have been met, so the
guilty verdict should not stand.  Id. at 485.  This standard
acknowledges that evidence of guilt can preponderate in favor of conviction but
still be insufficient to prove the elements of the crime beyond a reasonable
doubt.  Id.  Stated another way, evidence supporting guilt can outweigh
the contrary proof and still be factually insufficient under a
beyond-a-reasonable-doubt standard.  Id.

Zuniga also reminds us that we must defer to the jury’s determination.  See
id. at 481. (citing Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim.
App. 1997)).  The jury determines the credibility of the witnesses and may
“believe all, some, or none of the testimony.”  Chambers v. State, 805
S.W.2d 459, 461 (Tex. Crim. App. 1991).  It is the jury that accepts or rejects
reasonably equal competing theories of a case.  Goodman v. State, 66
S.W.3d 283, 285 (Tex. Crim. App. 2001).  The evidence is not factually
insufficient merely because the factfinder resolved conflicting views of
evidence in favor of the State.  Cain, 958 S.W.2d at 410.

An object qualifies
as a deadly weapon if the actor intends a use of the object in which it would
be capable of causing death or serious bodily injury.  Bailey v. State,
38 S.W.3d 157, 159 (Tex. Crim. App. 2001); Dotson v. State, 146 S.W.3d 285, 299 (Tex.
App.—Fort Worth 2005, pet. ref’d).  Anything that actually causes death is a deadly
weapon.  Tyra v. State, 897 S.W.2d 796, 798 (Tex. Crim. App. 1995).  As noted above, a factfinder may
affirmatively find that a deadly weapon was used even if the object is not
identified.  Gordon, 2005 WL 2158824 at *2; Regan, 7 S.W.3d at
819-20; Stanul, 870 S.W.2d at 333 n.3; Mixon, 781 S.W.2d at 346-47. 
The presence and severity of wounds on the injured party are factors to be
considered in determining whether an object was used as a deadly weapon.  Bethel v. State, 842 S.W.2d 804, 807 (Tex. App.—Houston [1st Dist.] 1992, no
pet.); Mixon, 781 S.W.2d at 347.  A jury may consider all the facts of a
case in determining whether a deadly weapon was used.  Bethel, 842
S.W.2d at 807.

In a case where a
child is injured while in the care of one person and there are no witnesses as
to what occurred to cause the child’s injury, the primary evidence of the
manner of use of an object causing injury or death is evidence about the
severity, scope, and nature of the child’s injuries.  See, e.g.,
Gordon, 2005 WL 2158824 at *6-7; Stanul, 870 S.W.2d at 330-31, 335. 
Objects not known as deadly weapons per se may become deadly upon evidence of
the manner in which they are used.  Mixon, 781 S.W.2d at 346.  Even the
floor can be a deadly weapon.  See Johnston v. State, 150 S.W.3d 630,
639 (Tex. App.—Austin 2004, no pet.); Cooper v. State, 773 S.W.2d 749,
750 (Tex. App.—Corpus Christi 1989, no pet.).

In a statement to police, Harrison wrote that he
and his son would “play-fight” and Harrison would “softly hit him” in the
body.  The officer who took the statement testified that Harrison told him that
he could have hit the baby too hard.  The pathologist testified that the
injuries causing death would be consistent with an impact and compression of
the abdomen like a severe punch, a kick, a stomp, or being unrestrained in a
high speed car wreck, but would not be consistent with the baby’s falling out
of bed or off a chair.  The baby died of blunt force injuries that would be consistent
with being punched or kicked in the stomach by an adult male.  The pathologist
was familiar with what a deadly weapon was in the State of Texas and concluded
that the blunt force object used to cause the injuries in this case would be a
deadly weapon.

We hold that the
evidence is both legally and factually sufficient to support the jury’s deadly
weapon finding in this case.  Harrison’s third issue is overruled.

His fourth issue
complains that there was neither evidence nor a jury finding that identified
the weapon used or that proved the weapon was, in fact, unknown to the grand
jury, as alleged in the indictment.  Because the grand jury’s due diligence
inquiry is not an essential element of the offense, the State was not required
to prove it.  See In re A.J.G., 131 S.W.3d 687, 694 (Tex. App.—Corpus
Christi 2004, pet. denied) (citing Gollihar v. State, 46 S.W.3d 243, 253
(Tex. Crim. App. 2001) and Malik v. State, 953 S.W.2d 234, 240 (Tex.
Crim. App. 1997)); Richards v. State, 54 S.W.3d 348, 350 (Tex. App.—Houston [1st Dist.] 2001, pet. ref’d).  Accordingly, Harrison’s complaint is overruled.

Inconsistent Verdicts

          In his fifth issue, Harrison argues that the jury’s verdicts are inconsistent and demonstrate a lack of
evidence of intent to commit serious bodily injury.  Harrison contends that his
conviction for recklessly causing the victim’s death and his conviction for
intentionally or knowingly causing serious bodily injury are irreconcilable. 
Inconsistent verdicts, however, do not of themselves require a finding of legal
insufficiency to support the findings adverse to the criminal defendant.  See
Ruiz v. State, 641 S.W.2d 364, 366 (Tex. Crim. App. 1982).  Instead of
summarily finding the evidence legally insufficient to support the jury’s
verdict of guilt, we are to examine the legal sufficiency of the evidence to
support the counts on which a conviction was rendered.  Id.; Moranza
v. State, 913 S.W.2d 718, 724 (Tex. App.—Waco 1995, pet. ref’d).

          Harrison contends that
there was no evidence that he intentionally caused serious bodily injury to the
child.  On the question of intent, the jury is called upon to review all the
evidence and may reasonably conclude from the circumstantial evidence that the
requisite mental state existed.  Morales v. State, 828 S.W.2d 261, 263
(Tex. App.—Amarillo 1992), aff’d, 853 S.W.2d 583 (Tex. Crim. App. 1993).

          The State presented evidence that the
fatal injury occurred while Harrison was in the bedroom with the child.  The pathologist
testified that the injury was caused by a blunt object that was forceful enough
to press the child’s internal organs against his backbone.  The child’s
injuries were not consistent with falling from a chair or from a bed, and the
autopsy revealed several other, older internal injuries that were in various
stages of healing.  Medical evidence of this nature is sufficient for the jury
to infer the defendant’s intent to cause the child serious bodily injury.  Id.; Moore v. State, 708 S.W.2d 484, 487-88 (Tex. App.—Dallas 1986), rev’d
on other grounds, 749 S.W.2d 54 (Tex. Crim. App. 1988), overruled on
other grounds by Awadelkariem v. State, 974 S.W.2d 721, 724 (Tex. Crim.
App. 1998); Crouch v. State, 702 S.W.2d 660, 662 (Tex. App.—Tyler 1985,
pet. ref’d).

Texas
case law is replete with holdings that when an adult defendant has had sole
access to a child at the time its injuries are sustained, the evidence is
sufficient to support a conviction for injury to a child, or murder if the
child dies.  See Bryant v. State, 909 S.W.2d 579, 583 (Tex. App.—Tyler
1995, no pet.) (where evidence showed child had been left alone with defendant
and injuries to child occurred approximately thirty minutes prior to child
being brought to emergency room, evidence was sufficient to support
conviction); Elledge v. State, 890 S.W.2d 843, 846 (Tex. App.—Austin
1994, pet. ref’d) (undisputed medical testimony placing adult defendant alone
with child when fatal injuries were sustained supported conviction for injury
to a child); Butts v. State, 835 S.W.2d 147, 151 (Tex. App.—Corpus
Christi 1992, pet. ref’d) (injuries sustained by child established by medical
testimony to have occurred at time adult defendant admitted to sole possession
of child).

 

Garcia v. State, 16 S.W.3d 401, 405 (Tex. App.—El Paso 2000,
pet. ref’d).

Finding the evidence legally sufficient to
support the verdict, we overrule this issue.

 

Prior Convictions

            Harrison argues in his first issue that
the trial court erred in allowing the State, during the guilt-innocence phase,
to ask “were you aware” questions about Harrison’s prior assault convictions
(assault, assault on a public servant, and several class disruptions in high
school).  A trial court has wide discretion in admitting evidence of a
defendant’s prior convictions.  Theus v. State, 845 S.W.2d 874, 881
(Tex. Crim. App. 1992).  We will not reverse the trial court’s ruling absent an
abuse of discretion.  Id.

          The defense called several witnesses
to testify to what kind of father Harrison was and how he interacted with
children.  One of those witnesses testified as follows:

Question:       Could you tell us how you know
Rickey Harrison?

Answer:        Well, I know Rickey through my
son, Detrick Evans.  They were 

good friends.  He was a sweet person, he was a
good person.  He used to stay the nights at my house.  He done watched my kids
and I didn’t have a problem with him. 

 

The prosecution argued at trial, and reasserts
on appeal, that because the witness testified that Harrison was a “good person”
and a “sweet person,” she opened the door for the State to rebut her opinion
testimony with the prior convictions.

“Do you know” questions (or “were you aware”
questions) are permissible under rules 405(a) and 404(a)(1) of the Texas Rules
of Evidence.  Tex. R. Evid.
404(a)(1), 405(a); Reynolds v. State, 848 S.W.2d 785, 788 (Tex.
App.—Houston [14th Dist.] 1993, pet. ref’d); Bratcher v. State, 771
S.W.2d 175, 187 (Tex. App.—San Antonio 1989, no pet.) (“were you aware”
questions acceptable for opinion witness).  Rule 404(a)(1) allows an accused to
offer general reputation or opinion testimony to prove character.  Thomas v.
State, 759 S.W.2d 449, 452 (Tex. App.—Houston [14th Dist.] 1988, pet.
ref'd).  Rule 405(a) states that character witnesses may be cross-examined on
“relevant specific instances of conduct.”  Tex.
R. Evid. 405(a).  Reputation witnesses may be cross-examined with “have
you heard” questions; opinion witnesses may be cross-examined with “do you
know” questions.  Reynolds, 848 S.W.2d at 788.  Before such
cross-examination can take place, the State must establish a two-part predicate
for the question.  First, there must be a factual basis for the incidents
inquired about; and second, the incidents must be relevant to the character
trait at issue.  Murphy v. State, 4 S.W.3d 926, 931 (Tex. App.—Waco
1999, pet. ref’d).

Harrison
does not argue that there was no factual basis for the prior convictions; nor
does he argue that the prior convictions are irrelevant to the character traits
of being a good or sweet person.  Rather, he argues that (1) the witness’s
response went solely to the issue of how Harrison treated his child or the
witness’s children; and (2) the witness’s answer was nonresponsive.  We do not
agree that the witness’s statement that Harrison is a “good and sweet” person
was limited to his interaction with children.  The statement itself was not
qualified, nor was it made in the context of a discussion of Harrison’s
interaction with children.

However, we do agree that the witness’s answer
was unsolicited and not responsive to any question asked.  It is apparent from
defense counsel’s questions on direct examination that defense counsel sought
the witness’s observations of Harrison’s interaction with his own child and
with the witness’s children:

Q.      . . . . Could you tell us how you know
Rickey Harrison?

. . . .

Q.      Rickey stayed nights at your house?

. . . .

Q.      Okay.  And he’d watch your kids?

. . . .

Q.      Okay.  And how old were your kids when
Rickey was doing that?

. . . .

Q.      Okay.  Rickey ever beat up on your
little babies?

. . . .

Q.      Okay.  Did you ever see Rickey as he
interacted with his own baby . . . ?

. . . .

Q.      Did he act like he liked the kid?

. . . .

Q.      Did he ever—did he ever hurt him?

. . . .

Q.      Do you believe for even a minute that he
would hurt him?

 

Defense counsel’s questions did not solicit the
witness’s opinion as to Harrison’s character or Harrison’s reputation in the
community.

The issue is whether the defense witness’s
volunteered and nonresponsive opinion testimony nonetheless placed Harrison’s character at issue, thus opening the door for “were you aware” questions. 
Courts have found similar witness testimony insufficient to place the
defendant’s reputation at issue so as to allow the State to rebut with “have
you heard” questions.  See, e.g., Rutledge v. State, 749 S.W.2d 50, 51
(Tex. Crim. App. 1988) (witness testified defendant was impeccable, never
drank, didn’t curse, and was just a nice person); Stephens v. State, 660
S.W.2d 85, 86-87 (Tex. Crim. App. 1983) (wife of defendant testified her
husband loved her family, supported family, held a steady job, and participated
on a track team, basketball team, and community cleanup committee); Nixon v.
State, 653 S.W.2d 443, 444 (Tex. Crim. App. 1983) (defendant’s supervisor
testified he was a hard worker, ideal employee, and "a very kind guy"
who got along with everyone and often volunteered to help others); Smith v.
State, 763 S.W.2d 836, 840 (Tex. App.—Dallas 1988, pet ref'd) (witness
testified “have never known him [defendant] to be in any kind of trouble”); Powell
v. State, 663 S.W.2d 465, 466-67 (Tex. App.—Houston [1st Dist.] 1983, no
pet.) (witness testified defendant was “nice person” who didn't create problems
around apartment complex).

We conclude that the defendant did not place his
character or reputation at issue through the witness’s testimony.  Therefore,
the State should not have been allowed to ask the witness “were you aware”
questions.

Having held that the “were you aware” questions about
Harrison’s prior assault convictions were improperly allowed, we must now
determine whether Harrison was harmed by the error.  Error under the rules of
evidence in admitting evidence of extraneous offenses is nonconstitutional
error governed by Texas Rule of Appellate Procedure 44.2(b).  Tex. R. App. P. 44.2(b); Johnson v.
State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).  Rule 44.2(b) provides
that a nonconstitutional error "that does not affect substantial rights
must be disregarded."  Substantial rights are not affected by the erroneous
admission of evidence if, after examining the record as a whole, we have fair
assurance that the error did not influence the jury, or had but a slight
effect.  Bagheri v. State, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003); Motilla
v. State, 78 S.W.3d 352, 356 (Tex. Crim. App. 2002); Solomon v. State,
49 S.W.3d 356, 365 (Tex. Crim. App. 2001).

In conducting a harm analysis under Rule
44.2(b), we decide “whether the error had a substantial or injurious effect on
the jury verdict.”  Morales v. State, 32 S.W.3d 866, 867 (Tex. Crim. App. 2000).  We “consider everything in the record, including any testimony or
physical evidence admitted for the jury’s consideration, the nature of the
evidence supporting the verdict, the character of the error and how it might be
considered in connection with other evidence in the case[,] . . .the jury
instruction given by the trial judge, the State’s theory and any defensive
theories, closing arguments, and voir dire if material to appellant’s claim.”  Id.  We also consider overwhelming evidence of guilt, but that is only one factor in
our harm analysis.  Motilla, 78 S.W.3d at 356-58.

The State’s theory was that Harrison caused the
baby’s injuries on the evening before the baby died.  The pathologist testified
that the injury was consistent with a strong blow to the baby’s abdomen and
that the injury would not be consistent with the baby’s falling out of bed or
off a chair.  He said that the symptoms the baby would display after receiving
the injury would be crying, difficulty breathing, vomiting, and sleepiness. 
The child’s mother testified to witnessing all of these symptoms that evening
after she left the baby with Harrison.  The officer who took Harrison’s
statement that he would play-fight with the baby testified that Harrison told him that maybe he hit the baby “a little too hard.”

Another officer testified that Harrison mumbled
under his breath “I killed him.”  But after booking Harrison, that officer said
to Harrison, “Now you confessed to having killed your son, didn’t you?”  But he
further testified that Harrison responded, “What are you—what are you talking
about?  I didn’t say anything like that.”  Two child witnesses for the defense
testified that the baby’s mother’s eleven-year-old sister admitted to them that
she had killed the baby.  The defense theory was that Harrison loved the baby
very much, as evidenced by his having walked from Marlin to Waco to see the
baby in the hospital right after his birth, and that he was a caring father who
would not have committed this crime.

The jury was instructed that evidence regarding Harrison’s prior convictions could not be considered as evidence of guilt and could be
considered only with regard to the credibility of witnesses.  However, the
prosecution used the prior convictions not only to cross-examine the witness,
but also to argue in closing that Harrison was an angry and violent person:

Think about the defendant’s anger.  I think this
is important.  He has previous assaultive behavior that you-all know about it
now because you weren’t going to be left with the impression that he was a good
and sweet boy like their witnesses tried to make him out to be.  He’s got an
anger problem.  He punched holes in those walls.  He was jealous of that baby,
and that was why he got angry with [the baby’s mother].

 

          The character of the
improperly admitted evidence—Harrison’s history of assaultive conduct—flowed
with the State’s theory, supported the contested issues of intent and motive,
and was emphasized by the State in closing argument.  In a circumstantial
evidence case such as this where there is substantial, but not overwhelming,
evidence of guilt, we are constrained to conclude that the error probably did
influence the jury or had more than a slight influence on its verdict.  Finding
that the erroneous admission of Harrison’s prior assault convictions affected his
substantial rights, we sustain his first issue.

CONCLUSION

The trial court’s judgment is reversed and the
case is remanded to the trial court for further proceedings consistent with
this opinion.  Our opinion and judgment
dated July 20, 2005, are withdrawn, and this opinion is substituted as the
opinion of the court.  Tex. R. App. P.
50.  Harrison’s and the State’s petitions for discretionary review are
dismissed by operation of law.  Id.

 

BILL VANCE

Justice

 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

          (Chief
Justice Gray dissenting)

Reversed
and remanded

Opinion
delivered and filed October 19, 2005

Do
not publish

[CR25]dly he deadly weapon