Opinion
issued October 13, 2011.



In The

Court of Appeals

For The

First District of Texas

————————————

NO.
01-10-00467-CR

———————————

Deniro Crockett,
Appellant

V.

The State of Texas,
Appellee



 



 

On
Appeal from the 180th District Court

Harris
County, Texas



Trial Court Case No. 1186256

 



 

 

MEMORANDUM OPINION

 

          Deniro Crockett
was convicted by a jury of aggravated robbery and the jury assessed punishment
at 40 years’ confinement and a $2,000 fine. 
In four points of error, Crockett contends that: (1) the evidence is
legally insufficient to sustain the conviction; (2) the trial court erred by
permitting the police officer to testify, over defense objection, that
appellant was guilty of extraneous offenses and that such testimony was
hearsay; (3) the State committed reversible error during argument; and (4) the
trial court erred by refusing to allow appellant to make a bill of exception
regarding potential jury misconduct.

          We affirm.

Background

          In early October 2008, cashiers Tamara
Grayson and Lataysha Hillsman were counting the money in their registers at a
Houston convenience store/gas station prior to closing at 9:00 p.m.  Grayson testified that appellant, Deniro
Crockett, approached her, pulled a big silver handgun from his waistband, and
demanded the cash from her register. 
Hillsman testified that Crockett laid the gun on the counter and pointed
it at Grayson while he was robbing Grayson.

          After Grayson gave him all the cash in
her register, Crockett then turned to Hillsman, who had the money she was
counting in her hands.  Hillsman
testified that Crockett again laid the gun on the counter, leaned on the
counter with the gun pointed at her, and demanded the cash from her register,
as well.  She complied.  Both Hillsman and Grayson closely observed
Crockett during the robbery.  Grayson, in
fact, testified that she would never forget his face.

          After getting the cash from both
registers, Crockett left the store. 
Hillsman testified that Crockett drove off in a gray four-door car which
she believed was a Grand Am or a Grand Prix. 
Grayson or Hillsman then called the police.  When Officers Richardson and Hadley arrived,
both cashiers reported the robbery and described the suspect and vehicle.

          The following day, Officer Terrell of
the Houston Police Department was dispatched to another robbery at a Family
Dollar store located in the same part of Houston.  Keely Bryant, the assistant manager of the
store, testified that while she was counting the cash, an armed man approached
her and demanded it.  She described how
he laid the gun on the counter pointed towards her.  When she refused to give him the cash, he
fled in a gray Grand Am, the license plate number of which she noted, along
with a description of the vehicle and the man who attempted to rob her.  At trial, Bryant identified Crockett as that
man.

          Officer Terrell put out a general
broadcast for the getaway vehicle, and later that day, Officer Lopez spotted
the car and followed it.  Crockett was
apprehended and arrested when he stopped the car and ran.  The following day, Grayson viewed a line-up
of suspects, and after observing and hearing them speak, she immediately
identified Crockett.  Hillsman also
identified Crockett in court.

          Crockett’s sister, Lynn Harris,
testified that he picked her up from work at about 7:45 on the evening of the
robbery and that she was with him until 4:00 the following morning.  Harris also testified that she would lie for
her brother, though she qualified that statement to claim that she would not
lie in a criminal matter.

          The jury found Crockett guilty as
charged and assessed punishment at 40 years’ confinement and a $2,000 fine.

Legal Sufficiency

          In his first issue, appellant contends
that the evidence is legally insufficient to sustain his conviction because (1)
there was insufficient evidence of identification to convict, and (2) there was
no evidence that appellant used or exhibited a deadly weapon.

          A.
Standard of Review

          The Court of Criminal Appeals has determined
that the test for factual sufficiency is indistinguishable from that of legal
sufficiency.  See Brooks v. State, 323 S.W.3d 893, 897 (Tex. Crim. App.
2010).  But see Ervin v. State,
331 S.W.3d 49, 56–68 (Tex. App.—Houston [1st Dist.] 2010, pet ref’d) (Jennings,
J., concurring).  Our assessment reduces
to a determination of whether, based on all of the record evidence viewed in
the light most favorable to the verdict, a rational jury could have found the
essential elements of the offense beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979); Swearingen v. State, 101 S.W.3d 89, 95
(Tex. Crim. App. 2003).

Under the Jackson
standard, evidence is insufficient to support a conviction when, considering
all the evidence admitted at trial in the light most favorable to the verdict,
a fact finder could not have rationally found that each element of the charged
offense was proven beyond a reasonable doubt. 
See Jackson, 443 U. S. at 319,
99 S. Ct. at 2789; In re Winship, 397
U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970); Williams
v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  This standard is met under two circumstances:
(1) the record contains no evidence, or merely a “modicum” of evidence,
probative of an element of the offense; or (2) the evidence, viewed in the
light most favorable to the verdict, conclusively establishes a reasonable
doubt.  See Jackson, 443 U.S. at 314, 318 n.11, 320, 99 S. Ct. at 2319,
2789 n.11; Williams, 235 S.W.3d at
750; Laster v. State, 275 S.W.3d 512,
518 (Tex. Crim. App. 2009).  In applying
the Jackson standard of review, an
appellate court must defer to the responsibility of the fact finder to fairly
resolve conflicts in testimony, to weigh evidence, and to draw reasonable
inferences from the facts.  See Jackson, 443 U.S. at 319, 99 S. Ct.
at 2789; Williams, 235 S.W. 3d at
750.  An appellate court presumes that
the trier of fact resolved any conflicts in the evidence in favor of the
verdict and defers to that resolution, provided that the resolution is
rational.  See Jackson, 443 U.S. at 326; 99 S. Ct at 2793.  An appellate court may not re-evaluate the
weight and credibility of the record evidence and thereby substitute its own
judgment for that of the fact finder.  Williams, 235 S.W.3d at 750.

 

 

          B.
Evidence of Identification

          The identity of the person committing
the offense is an element of the crime that must be proved.  See
Greene v. State, 124 S.W.3d 789, 792 (Tex. App.—Houston [1st Dist.] 2003,
pet. ref’d) (holding that identity is element of offense and may be proven by
direct or circumstantial evidence). 
Courts have found voice identification alone to be legally and factually
sufficient to establish identity.  McInturf v. State, 544 S.W.2d 417,
418−19 (Tex. Crim. App. 1976) (holding that voice identification
constituted direct evidence of identity when complainant had one 30-minute
encounter with appellant); Davis v. State,
180 S.W.3d 277, 286 (Tex. App.—Texarkana 2005, no pet.) (holding that
complainant’s voice identification of appellant was legally and factually
sufficient to support conviction when complainant had one 15-minute encounter
with appellant).  Likewise, sight
identification may be both legally and factually sufficient to establish
identity.  Johnson v. State, 176 S.W.3d 74, 78 (Tex. App.—Houston [1st Dist.]
2004, pet. ref’d) (holding eye-witness identification was factually sufficient
to support conviction when complainant saw appellant only on night that he
robbed her, but complainant testified she recognized appellant by his eyes); Walker v. State, 180 S.W.3d 829,
832−33 (Tex. App.—Houston [14th Dist.] 2005, pet. ref’d) (holding
identification by only one eye-witness was legally and factually sufficient to
support conviction when appellant robbed complainant at gunpoint and robbery
lasted less than one minute).

          Here, both Hillsman and Grayson were
eye-witnesses to the robbery.  Both women
testified that they observed appellant for ten to fifteen minutes while the
robbery took place.  Additionally, each
gave specific descriptions of appellant and 
each positively identified appellant in court as the robber.  Grayson testified that she “will never forget
his face.”  Hillsman testified that when
“someone pulls a gun on you, you never going to forget that.”  Furthermore, at the line-up two days after
the robbery, Grayson was able to hear appellant’s voice as well as see
him.  Grayson immediately identified
appellant from the lineup.  We hold that
Grayson’s and Hillsman’s identification of appellant as the robber is both
legally and factually sufficient to support his conviction for aggravated
robbery.

          We overrule appellant’s first issue on
this point.

          C.
Evidence that Appellant Used or Exhibited a Deadly Weapon

          Appellant argues there was
insufficient evidence to show he used a deadly weapon, i.e., a firearm.

Aggravated
robbery requires the use or exhibition of a deadly weapon during the commission
of a robbery.  See Tex. Penal Code Ann.
§ 29.03(a)(2) (West 2003).  A deadly
weapon is defined as a firearm or anything manifestly designed, made, or
adapted for the purpose of inflicting death or serious bodily injury or
anything that, in the manner of its use or intended use, is capable of causing
death or serious bodily injury.  See Tex.
Penal Code Ann. § 1.07(a)(17)(A) (West Supp. 2010).

The
indictment in this case alleges, in pertinent part, that appellant

did then and
there unlawfully, while in the course of committing theft of property owned by
TAMARA GRAYSON and with intent to obtain and maintain control of the property,
intentionally and knowingly threaten and place TAMARA GRAYSON in fear of
imminent bodily injury and death, and that the Defendant then and there used
and exhibit a deadly weapon, to-wit: A FIREARM.

 

          Appellant contends that the proof at
trial was that a “gun” was used, but there is no evidence in the record that the
instrument used was a “firearm.” 
According to appellant, since the State indicted him using the
unnecessary descriptive term “firearm,” the State had to prove the descriptive
matters as alleged.  See Gomez v. State, 685 S.W.2d 333, 336 (Tex. Crim. App.
1985).  In other words, appellant argues
that the victims’ testimony that he used a “gun” is legally insufficient to
prove “firearm” as alleged in the indictment.

          We disagree.  “Testimony using any of the terms ‘gun,’
‘pistol’ or revolver’ is sufficient to authorize the jury to find that a deadly
weapon was used.”  Wright v. State, 591 S.W.2d 458, 459 (Tex. Crim. App. 1980).  Specifically, testimony of a “gun” has been
held sufficient to prove the use of a “firearm” as alleged in an
indictment.  Gomez, 685 S.W.2d at 336.  In
Gomez the indictment, as here,
alleged the defendant used a deadly weapon, “namely a firearm.”  Id.  And in this case, there was no weapon
produced at trial and the witness identified the instrument as a “gun” or
“revolver.”  Id. 
The Gomez court concluded that the testimony as to a deadly
weapon was sufficient to sustain the guilty verdict.  Id.  More recently, this Court has held that,
“[a]bsent any specific indication to the contrary at trial, the jury should be
able to make the reasonable inference, from the victim’s testimony that the
‘gun’ [that] was used in the commission of a crime, was, in fact, a
firearm.”  Cruz v. State, 238 S.W.3d 381, 388 (Tex. App.—Houston [1st Dist.]
2006, pet. ref’d).

          Here, the victim cashiers Hillsman and
Grayson both described the gun in question.  From this evidence,
the jury could have concluded beyond a reasonable doubt that the gun that appellant
threatened them with was a firearm.

We
overrule appellant’s issue on this point.

Testimony Regarding Extraneous
Offenses

          In his second issue, appellant
contends that the trial court erred by permitting a police officer to testify,
over objection, that appellant was guilty of extraneous offenses and that such
testimony was hearsay.

          This issue is subdivided into two
parts.  The first involves a formal
introduction of evidence concerning an extraneous aggravated robbery.  The second involves a comment made the
officer in response to a question from appellant’s counsel.

          A.
The Extraneous Offense

          Appellant
complains first of the State’s introduction of evidence concerning an
aggravated robbery at a Family Dollar store in Acres Homes that occurred the
day after the robbery in question.  Keely
Bryant, the cashier of the Family Dollar, testified that appellant came into
the store while she was counting the cash in her drawer, laid a gun pointed at
her on the counter, and demanded cash. 
When she refused to give him the money, appellant fled in a gray
Pontiac.  When the police arrived, Bryant
gave a description of appellant and the car, as well as the license plate
number of the car.  The police spotted
the car the following day and appellant was arrested after he stopped the car
and ran.  Bryant identified him on the
day of the offense as the perpetrator and later identified him in court as
well.

                   1. The Law

          We review a trial court’s admission of
extraneous offense evidence under an abuse of discretion standard.  Page v.
State, 137 S.W.3d 75, 78 (Tex. Crim. App. 2004); Lane v. State, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996); Blackwell v. State, 193 S.W.3d 1, 8
(Tex. App.—Houston [1st Dist.] 2006, pet. ref’d).  As long as the trial court’s ruling was within
the “zone of reasonable disagreement,” there is no abuse of discretion, and the
ruling must be upheld.  Thomas v. State, 126 S.W.3d 138, 143
(Tex. App.—Houston [1st Dist.] 2003, pet. ref’d).

          Rule 404(b) prohibits the introduction
of extraneous offenses to show character conformity.  Tex.
R. Evid. 404(b); Page, 137
S.W.3d at 78; Moses v. State, 105
S.W.3d 622, 626 (Tex. Crim. App. 2003); Blackwell,
193 S.W.3d at 9.  Extraneous-offense
evidence may be admissible, however, when relevant beyond character conformity,
to show, for example, proof of motive, opportunity, intent, preparation, plan,
knowledge, identity, or absence of mistake or accident.  Moses,
105 S.W.3d at 626; Blackwell, 193
S.W.3d at 9.  An extraneous offense may
be admissible to prove identity only when the identity of the perpetrator is at
issue in the case.  Page v. State, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006); Lane, 933 S.W.2d at 519.  A defendant may raise the issue of identity
by presenting an alibi defense.  Moore v. State, 700 S.W.2d 193, 201
(Tex. Crim. App. 1985); Hughes v. State,
962 S.W.2d 89, 92 (Tex. App.—Houston [1st Dist.] 1997, pet. ref’d).

          “Evidence of a defendant’s particular
modus operandi is a recognized exception to the general rule precluding
extraneous offense evidence, if the modus operandi evidence tends to prove a
material fact at issue, other than propensity.” 
Owens v. State, 827 S.W.2d
911, 915 (Tex. Crim. App. 1992) (en banc); Regan
v. State, 7 S.W.3d 813, 817 (Tex. App.—Houston [14th Dist.] 1999, pet.
ref’d). When extraneous offense evidence is introduced to prove identity by
comparing common characteristics, the evidence must be so similar to the
charged offense that the offenses illustrate the defendant’s “distinctive and
idiosyncratic manner of committing criminal acts.”  Page,
213 S.W.3d at 336 (quoting Martin v.
State, 173 S.W.3d 463, 468 (Tex. Crim. App. 2005); Owens, 827 S.W.2d at 915. 
The common characteristics of the offenses must be so similar as to act
as the defendant’s signature.  Page, 213 S.W.3d at 336; Taylor v. State, 920 S.W.2d 319, 322
(Tex. Crim. App. 1996).  Extraneous
offense evidence that is admitted to show identity must demonstrate a much
higher degree of similarity to the charged offense than extraneous offenses
admitted for other purposes such as intent. 
Bishop v. State, 869 S.W.2d
342, 346 (Tex. Crim. App. 1993).  Without
such a high degree of similarity between the offenses, the probative value of
the extraneous offense evidence would be outweighed by its prejudicial effect.  Id.  To determine if the characteristics of the
offenses are similar and distinguishing enough to act as the defendant’s
signature, appellate courts should take into account both the specific
characteristics of the offenses and the time interval between them.  Thomas,
126 S.W.3d at 144.

                   2. Discussion

          The
record reveals that the two robberies occurred within twenty-four hours of one
another and had the following similarities: (1) both robberies occurred in the
same part of Houston; (2) witnesses from both robberies identified appellant as
the perpetrator of those robberies; (3) in both robberies, appellant fled the
scene in a grey four-door Pontiac; (4) both robberies were of small
convenience-store type businesses; (5) both robberies occurred when the
cashiers were counting money from the register; and (6) in both robberies,
appellant used a gun by laying it on the counter facing the cashier while
demanding money.

          As the robberies occurred within
twenty-four hours of each other, the extraneous offense is sufficiently close
in time to allow admission of the evidence as long as there are other
sufficient characteristics.  See Page, 213 S.W.3d at 337−38
(holding that “the facts of the charged offense and the extraneous offenses
show a pattern of conduct sufficiently distinctive to constitute a ‘signature’”
when one incident occurred in spring 1997 and another incident occurred
September 1997, and other similarities existed between incidents); Thomas, 126 S.W.3d at 146 (holding time
period of eleven months between charged offense and extraneous offense was not
“so remote in time to be inadmissable” when there were sufficient common
distinguishing characteristics in charged offense and extraneous offense).

          The geographical proximity of the two
offenses, both occurring in the same part of Houston, is likewise sufficiently
close as long as there are other common distinguishing characteristics.  See
Chavez v. State, 794 S.W.2d 910, 914 (Tex. App.—Houston [1st Dist.] 1990,
pet. ref’d) (holding that evidence of extraneous offenses was admissible when
charged offense and extraneous offenses all occurred in Rosenberg, Texas, and
there were other distinguishing characteristics common to charged offense and
extraneous offenses).

          Evidence that victims in both
robberies identified appellant as the perpetrator in the two robberies,
respectively, is also a factor that weighs in favor of admission of the
extraneous offense evidence.  See id. (holding that identification of
appellant as attacker by complainant and two victims of sexual abuse was one
distinguishing characteristic that weighed in favor of admission of extraneous
offense evidence).

          The use of the same or similar getaway
vehicles is also a factor that weighs in favor of admission of the extraneous
offense, as is the fact that both robberies were of small convenience-store
type businesses and occurred when the cashiers were counting money from the
register.  Most telling, however, is the
use of the gun in both robberies. 
Appellant did not flourish a pistol or hold it up in his hand and point
it at the cashier.  Instead, in both
robberies appellant displayed a gun by laying it on the counter facing the
cashier while demanding money.

          The dissimilarities between the two
robberies include differences in how appellant was dressed and whether he wore
a removable “grill”; the time of day of each robbery; different descriptions of
the gun used; minor discrepancies in the description of the car; and the fact
that appellant walked away from the first robbery with cash while he was
unsuccessful in the second robbery.

          We conclude that the trial court did
not abuse its discretion by admitting evidence of the Family Dollar robbery
because it was sufficiently similar to the charged offense to be probative
evidence of appellant’s identity, apart from merely showing character
conformity.  See Thomas, 126 S.W.3d at 144, 146 (holding that sufficient
similarity was established between charged offense and extraneous offense “by a
common mode of committing the offenses.” (citing Roberts v. State, 29 S.W.3d 596, 600 (Tex. App.—Houston [1st Dist.]
2000, pet. ref’d); Lane, 933 S.W.2d
at 519)).  We hold that the trial court
did not abuse its discretion by overruling appellant’s objection under Rule
404(b).  See id.

          We overrule appellant’s second issue
on this point.

          B.
The “Narcotics Transaction”

          Appellant
also claims that the trial court erred in permitting an officer to testify
about a “narcotics transaction” in which appellant was allegedly involved.  This testimony occurred when counsel for
appellant was cross-examining Officer Nealy concerning the car appellant used
to get away after the robberies.  Officer
Nealy testified that he discovered that the vehicle was owned by Kamesha
Waller.  Appellant’s counsel inquired if
the police had done any investigation other than trying to call Waller.  Officer Nealy said he had done so and further
commented as follows:

(Officer
Nealy): Also, when I continued to do my search on that vehicle, I saw an
offense report from the previous month where some patrol officers — actually
was during the hurricane, where some patrol officers got dispatched out to an
illegal narcotics transaction.  The
defendant and another individual were arrested for possession of marijuana —

 

Mr. Martin:
Objection.  Objection.  This is —

 

The Court:
Excuse me.  One at a time, please.

 

Mr. Martin:
First off, it is nonresponsive.  I was
talking specifically about Ms. Waller. 
Secondly, he is going far afield on anything regarding an extraneous
offense as identified by the State.

 

The Court:
Listen to the question you are asked, please. 
Respond to the question that you were asked.

 

(Officer Nealy): I’m sorry,
counsel.  You asked me did I do any type
of investigation on the license plate and I am just indicating that license
plate led me to another offense report that happened two weeks —

 

Mr. Martin:
Excuse me, sir.  I don’t have a question.

 

The Court:
Sir.  Stop.

 

Q. (by Mr.
Martin) I don’t have a question before you on that right now.  My question to you is simple: The car came
back to somebody other than Mr. Crocket, correct?

 

A.  Yes, sir.

 

Q.  Thank you.

 

Mr. Martin:
Pass.

 

          Appellant argues that this testimony
was hearsay, was not inadvertent and was harmful.  According to appellant, “[t]he jurors were
left with the impression that Appellant was an all-round punk criminal.”

          Appellant failed, however, to preserve
error on this point.  Although he
objected, he failed to obtain a ruling on his objection.  Nothing is preserved for our review.  See
Tex. R. App. P. 33.1(a); Wilson v. State, 71 S.W.3d 346, 349
(Tex. Crim. App. 2002) (to preserve error for appellate review, complaining
party must make specific objection and obtain ruling on objection). 

          We overrule appellant’s second issue
on this point.

State’s Closing Argument

          In his third issue, appellant claims
that the State committed reversible error during closing argument.  Specifically, appellant points to the
following statement as error: “When this happens again, and you know what?  Next time he may not leave any witnesses.  There may not be any witnesses . . . Next
time he might just shoot somebody.” 
Counsel objected to this statement as “far outside the record as to
speculation as to any future crimes” and the trial court overruled this
objection.

          A.
The Law

          The four general areas for proper jury
argument are (1) summation of the evidence, (2) reasonable deduction from the
evidence, (3) answer to argument of opposing counsel, and (4) plea for law
enforcement.  Wesbrook v. State, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000).  The prosecutor may draw all reasonable
inferences from the facts in evidence that are reasonable, fair, and
legitimate.  Allridge v. State, 762 S.W.2d 146, 156 (Tex. Crim. App. 1988) (en
banc).  Error exists when facts that are
not supported by the record are interjected in the argument, but such error is
not reversible unless, in light of the record as a whole, the argument is
extreme or manifestly improper.  Id. at 155; Wright v. State, 178 S.W.3d 905, 929 (Tex. App.—Houston [14th
Dist.] 2005, pet. ref’d).

          B.
Discussion

          Appellant argues that the prosecutor’s
comments that, “[n]ext time he may not leave any witnesses.  There may not be any witnesses . . . Next
time he might just shoot somebody” is outside the record and thus is improper
jury argument.  In essence, appellant
complains that the prosecutor went beyond the evidence when he argued that the
next time appellant commits such a crime he might shoot and kill someone.

          The prosecutor’s argument concerning
the likelihood of another robbery was supported by the evidence that appellant
committed two such robberies in 24 hours. 
While the argument may have invited speculation about what might happen
in a future robbery, such speculation is not necessarily improper if the
argument is a reasonable deduction from the evidence.  See
Gonzales v. State, 831 S.W.2d 491, 494
(Tex. App.—Houston [14th Dist.] 1992, pet. ref’d) (holding it was proper for
prosecutor to query what would have happened if defendant, who slashed
witness’s hand with knife, had been two steps closer to witness); Hudson v. State, 675 S.W.2d 507, 511 (Tex.
Crim. App. 1984) (holding it was permissible in criminal mischief case to ask
jury to speculate that defendant would have returned to house if police had not
arrived); Porter v. State, 601 S.W.2d
721, 723 (Tex. Crim. App. 1980) (holding it was proper for prosecutor to argue
that, “people can be killed in armed robberies” even though no one was killed
in offense).  We conclude that, in light
of the two armed robberies appellant committed in two days, the prosecutor’s
comments were reasonable deductions from the evidence.

          Furthermore, the prosecutor’s comments
were part of her plea for law enforcement. 
Defense counsel asked for the minimum sentence of 15 years; the
prosecutor asked the jury to start its deliberation at 50 years.  Her comment that, “next time, he might just
shoot somebody” is part of her argument asking the jury to assess a longer
sentence than it otherwise would have because appellant had committed the crime
at least once before and a long sentence was needed to protect society from appellant.  See,
e.g., Miles v. State, 312 S.W.3d 909, 911−12 (Tex. App.—Houston [1st
Dist.] 2010, pet. ref’d) (prosecutor’s statement that “when he gets out, based
on [past criminal history], he’s going to be right back in here somewhere” held
proper as plea for law enforcement); Pittman
v. State, 9 S.W.3d 432, 434 (Tex. App.—Houston [14th Dist.] 1999, no pet.)
(finding, in DWI trial, prosecutor’s multiple statements that jury should
sentence defendant to 20 years because defendant would drive drunk again and kill
someone were proper pleas for law enforcement); Long v. State, 820 S.W.2d 888, 894–95 (Tex. App.—Houston [1st
Dist.] 1991, pet. ref’d) (prosecutor’s plea that jury incarcerate accused for
extended time to prevent appellant from doing same thing again was proper plea
for law enforcement).

          We overrule appellant’s third issue.

Trial Court’s Refusal to Allow Bill of Exceptions

Regarding Potential Jury Misconduct

 

          In
his fourth issue, appellant claims that the trial court erred in refusing to
allow appellant’s counsel to make a bill of exception regarding potential jury
misconduct.  Counsel for appellant
informed the trial court that appellant’s mother told him that, while she was
in the hall restroom of the courthouse, she overheard Hillsman talking on her
cellphone about the case.  Appellant’s
mother also reported that a couple of other women were in the bathroom at the
time, but that she did not pay any attention to who they might be.  Appellant’s counsel asked the court to have
the jurors state on record whether they were in the ladies’ restroom at the
time and if they heard the conversation.

          The judge refused.  Instead, he instructed the bailiff to ask the
female jurors whether they had used the ladies’ restroom in the hall.  The bailiff informed the judge that all the
female jurors denied being in the restroom. 
Appellant’s counsel re-iterated his request that the court “make inquiry
of the individual female jurors to determine the veracity of the allegations of
improper conduct during the break.”  The
court denied the motion.  Appellant’s
counsel asked for a mistrial, which the court also denied.

          Appellant has, however, waived this
complaint by failing to make a formal bill of exception.  See
Tex. R. App. P. 33.2.  This rule provides that “[t]o complain
on appeal about a matter that would not otherwise appear in the record, a party
must file a formal bill of exception.”  Tex. R. App. P. 33.2.  The trial judge must sign the bill and file
it with the trial court.  Tex. R. App. P. 33.2 (c).  In
a criminal case, the bill must be filed not later than 60 or 90 days after the
trial court pronounces or suspends sentence in open court, depending on if a
timely motion for new trial has been filed. 
Tex. R. App. P. 33.2
(e)(2)(A), (B).  Appellant failed to file
a formal bill of exception and thus has failed to preserve this complaint for
review.  See Bobbora v. Unitrin Ins. Servs, 255 S.W.3d 331, 335 (Tex.
App.—Dallas 2008, no pet.); Clifton v.
State, No. 05-09-00006-CR, 2009 WL 3401980, at *6 (Tex. App.—Dallas 2009,
no pet.) (“Assuming without deciding, the trial court erred [in denying
appellant opportunity to make an offer of proof], the issue is not properly
preserved for appeal because [appellant] did not file a formal bill of
exception.  As such, he is precluded from
complaining on appeal ‘about any matter that would not otherwise appear in the
record.’” (citing Tex. R. App. P. 33.2)).[1]

          Even had this issue been preserved,
however, appellant has not met his burden to show that the trial court’s
refusal to make a bill of exception constituted reversible error.  A trial court’s improper refusal to prepare a
bill of exception does not constitute reversible error unless the refusal
denied appellant’s rights to the extent the error was reasonably calculated to
cause, and probably did cause, the trial court to render an improper judgment. 
Houston Lighting & Power Co.
v. Russo Props., Inc., 710 S.W.2d
711, 717 (Tex. App.—Houston [1st Dist.] 1986, no writ) (citing State v. Biggers, 360 S.W.2d 516, 517
(Tex. 1962)).  Here, appellant has failed
to present any evidence that any juror was actually in the hall restroom at the
time the conversation took place. 
Appellant could have presented such evidence in the form of juror
affidavits attached to a motion for new trial, but did not.  See
Trout v. State, 702 S.W.2d 618, 620 (Tex. Crim. App. 1985) (“A motion for
new trial is the proper course to be taken in preserving alleged jury
misconduct error for appeal.”).  Nor does
he allege that the error, if any, in refusing to allow him to make a bill of
exception was reasonably calculated to cause, and probably did cause, the trial
court to render an improper judgment. 
Accordingly, for this reason as well, we conclude that the trial court
did not commit reversible error in refusing to allow counsel to make a bill of
exception.

          We overrule appellant’s fourth issue.

Conclusion

We
affirm the judgment of the trial court.

 

 

Jim Sharp

Justice

 

Panel consists of Chief Justice Radack and Justices
Sharp and Brown.

Do not publish. 
Tex. R. App. P. 47.2(b).

           

 

 











[1]           Appellant
seeks to avert the force of this argument by his observation that, “as a
practical matter, in criminal cases, the trial records are rarely ready within
60 days.”  We cannot, however, ignore the
plain language of a statute in favor of a general statement concerning the
“practicality” of its enforcement. 
Instead, we must leave such matters to the legislature for amendment, if
necessary.  See State v. Mancuso, 919 S.W.2d 86, 87 (Tex. Crim. App. 1996) (en
banc) (“It is the duty of the Legislature to make laws, and it is
the function of the Judiciary to interpret those laws.”).